Docket No. 20-CV-9853 (DLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEITH CARLSON,

Plaintiff,

-against-

NORTHWELL HEALTH, INC.,

Defendant.

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**COLLAZO & KEIL, LLP**
*Attorneys for Defendant*

Daniel J. LaRose
747 Third Avenue, 25th Floor
New York, New York 10017

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

ARGUMENT ........................................................................................................ 5

I.     LEGAL STANDARD............................................................................. 5

II.    PLAINTIFF'S CLAIMS UNDER THE ADEA AND THE NEW YORK
STATE HUMAN RIGHTS LAW FAIL................................................... 7

     A.     Plaintiff Has Not Made a Prima Facie Case of Discrimination ................ 8
         1.     Direct Evidence……………………………………………..8
         2.     Indirect Evidence…………………………………………..12
         3.     Inferences Against Discrimination………………………….13

     B.     Defendant Has Articulated A Non-Discriminatory Reason For
Plaintiff's Termination............................................................................. 15

     C.     Plaintiff Cannot Establish Pretext ........................................................... 16

III.   PLAINTIFF'S NEW YORK CITY HUMAN RIGHTS LAW CLAIMS
ALSO FAIL ......................................................................................... 19

CONCLUSION...................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456 (2d Cir. 2001) ........................................... 12

*Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014) ............................................. 19

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970) ........................................................... 6

*Alexander v. Possible Prods., Inc.*, 336 F. Supp. 3d 187 (S.D.N.Y. 2018) ................................. 20

*Allen v. Cuomo*, 100 F. 3d 253 (2d Cir. 1996) ............................................................................... 6

*Alvarado v. Jeffrey, Inc.*, 149 F. Supp. 3d 486 (S.D.N.Y. 2016) .................................................. 21

*Anderson v Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................................... 6

*Auguste v. New York Presbyterian Med. Ctr.*, 593 F. Supp. 2d 659 (S.D.N.Y. 2009) ............... 13

*Bailey v. Frederick Goldman, Inc.*, No. 02 Civ. 2429, 2006 WL 738435 (S.D.N.Y. Mar.

    23, 2006) ..................................................................................................................................... 12

*Baluta v. Hicksville Union Free Sch. Dist.*, No. 94–CV–1871, 2000 WL 335770

    (E.D.N.Y. Mar. 15, 2000) ......................................................................................................... 18

*Bogdan v. N.Y. City Transit Auth.*, No. 02 Civ. 09587(GEL), 2005 WL 1161812, at *8,

    (S.D.N.Y. May 17, 2005) .......................................................................................................... 16

*Burrell v. Bentsen*, 91 Civ. 2654, 1993 WL 535076 (S.D.N.Y. Dec. 21, 1993) ......................... 19

*Campos v. BASF Catalysts, LLC*, No. 07-CV-7068, 2009 WL 1616378 (S.D.N.Y. May

    19, 2009) ..................................................................................................................................... 17

*Carlton v. Mystic Transp., Inc.*, 202 F. 3d 129 (2d Cir. 2000) ................................................... 13

**TABLE OF AUTHORITIES**
(continued)

Page

*Concha v. Purchase Coll. State Univ. of New York*, No. 17 CIV. 8501 (JCM), 2019 WL
3219386, at *8 (S.D.N.Y. July 17, 2019) .............................................................. 16

*Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F.Supp.2d 202, 210 (S.D.N.Y. 2000)............. 14

*Danzer v. Norden Sys., Inc.*, 151 F.3d 50 (2d Cir. 1998)........................................... 8, 12

*De la Cruz v. City of New York*, 783 F. Supp. 2d 622, 647 (S.D.N.Y. 2011)........................ 9, 19

*Downey v. Adloox, Inc.*, No. 16 Civ. 1689 (JMF), 2018 WL 5266875, at *5 (S.D.N.Y.
Oct. 23, 2018) ....................................................................................... 16

*Drummond v. IPC Int'l, Inc.*, 400 F.Supp.2d 521, 532 (E.D.N.Y. 2005) ..................................... 14

*E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 876 (S.D.N.Y. 2013)................................... 22

*Earvin v. City Univ. of N.Y.*, No. 03 CV 9521, 2008 WL 5740359, at *6 (S.D.N.Y. Jan.
17, 2008) ............................................................................................ 15

*Emanuel v. Oliver, Wyman & Co.*, LLC, 85 F. Supp. 2d 321 (S.D.N.Y. 2000) .......................... 14

*Feurtado v. City of New York*, 337 F. Supp. 2d 593 (S.D.N.Y. 2004). ........................................ 6

*Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295 (2004) ........................................ 21

*Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41–42 (2d Cir. 2012)................................... 19

*Garrett v. Mazza*, No. 97 Civ. 9148, 2010 WL 653489 (S.D.N.Y. Feb. 22, 2010)..................... 13

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) ........................................ 7

*Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000) .................................... 12

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009) ............................................................ 7

H*enry v. Wyeth Pharm., Inc.*, 616 F.3d 134 (2d Cir. 2010) ........................................................ 9

*Hess v. Mid Hudson Valley StaffCo LLC*, 776 F. App'x 36, 37 (2d Cir. 2019) ........................ 19

*Hill v. Bloomberg L.P.*, No. 14cv9809, 2016 WL 1665599 (S.D.N.Y. Apr. 20, 2016) ............. 20

*Hill v. New York City Hous. Auth.*, 220 F. Supp. 3d 499 (S.D.N.Y. 2016) ................................ 20

*Hongmei Li v. Cushman & Wakefield, Inc.*, No. 16-CV-2484, 2017 WL 1740440

    (S.D.N.Y. May 3, 2017)......................................................................................................... 8, 12

*Jeffreys v. City of New York*, 426 F. 3d 549 (2d Cir. 2005) .......................................................... 6

*Jenkins v. St. Luke's–Roosevelt Hosp. Ctr.*, 09-cv-12, 2009 WL 3682458, at *7–8

    (S.D.N.Y. Oct. 29, 2009) ........................................................................................................ 13

*Johnson v. Schmid*, 750 F. App'x 12, 17 (2d Cir. 2018) ............................................................. 16

*Kaur v. N.Y.C. Health & Hosp. Corp.*, 688 F. Supp. 2d 317 (S.D.N.Y. 2010) .......................... 21

*Kerman-Mastour v Fin. Indus. Regulatory Auth., Inc.*, 814 F. Supp. 2d 355 (S.D.N.Y.

    2011) ..................................................................................................................................... 20

*Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98 (S.D.N.Y. 2009)........................ 17

*Konteye v. New York City Dep't of Educ.*, No. 17-CV-2876, 2019 WL 4418647 (S.D.N.Y.

    Apr. 10, 2019)........................................................................................................................ 20

*Martin v. City Univ. of New York*, No. 17-cv-6791, 2018 WL 6510805 (S.D.N.Y. Dec.

    11, 2018) ................................................................................................................................. 8

**TABLE OF AUTHORITIES**
(continued)

Page

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)....................................6

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)...............................................7

*Meiri v. Dacon*, 759 F. 2d 989 (2d Cir. 1985) ...............................................................6

*Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431 (S.D.N.Y. 2015).....................10

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013).....................20

*Moore v. Verizon*, No. 13 Civ. 6467, 2016 WL 825001 (S.D.N.Y. Feb. 5, 2016).....................10

*Parker v. Sony Pictures Entm't, Inc.*, 260 F. 3d 100 (2d Cir. 2001)...............................................6

*Pesok v. Hebrew Union Coll.—Jewish Inst. of Religion*, 235 F. Supp. 2d 281 (S.D.N.Y. 2002) .............................................................................................................13

*Pisana v. Merrill Lynch & Co.*, No. 93 Civ. 4541, 1995 WL 438715, at *4 (S.D.N.Y. July 20, 1995) ..............................................................................................................14

*Potash v. Florida Union Free Sch. Dist.*, 972 F. Supp. 2d 557 (S.D.N.Y. 2013) .......................17

*Ricks v. Conde Nast Pub., Inc.*, 6 F. App'x 74 (2d Cir. 2001)....................................................17

*Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir.2010).................................................12

*Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512 (S.D.N.Y. 2004)............................................19

*Shipkevich v. New York & Presbyterian Hosp.*, No. 16 Civ. 9630, 2020 WL 5796202, at *2 (S.D.N.Y. Sept. 29, 2020).............................................................................................7

*Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364 (S.D.N.Y. 2007)................................................18

**TABLE OF AUTHORITIES**
(continued)

Page

*Smalls v. New York Hosp. Med. Ctr. of Queens*, No. 13-CV-1257 RRM CLP, 2015 WL
5437575, at *7 (E.D.N.Y. Sept. 15, 2015) ............................................................... 10

*Smith v. Da Ros*, 777 F.Supp.2d 340, 355 (D.Conn.2011) .......................................... 10

*Sollazzo v. Just Salad Rest.*, 15-CV-0252, 2018 WL 1273661 (S.D.N.Y. Mar. 5, 2018) ............ 5

*South v. Cont'l Cas. Co.*, No. 17-CV-5741, 2018 WL 4689106, at *12 (S.D.N.Y. Sept.
27, 2018) ................................................................................................................ 14

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) ........................................... 7

*Testa v. CareFusion*, 305 F. Supp. 3d 423, 436–37 (E.D.N.Y. 2018) ........................... 14

*Tolbert v. Smith*, 790 F.3d 427, 436 (2d Cir. 2015) .................................................... 10

*Varughese v. Mount Sinai Med. Ctr.*, No. 12 CIV. 8812, 2015 WL 1499618, at *40
(S.D.N.Y. Mar. 27, 2015) ....................................................................................... 21

*Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir.2010) ....................................... 7

*Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 225 (E.D.N.Y. 1993) .......................... 14

*Wilson v. Reuben H. Donnelley Corp.*, No. 98 CIV. 1750 (AGS), 1998 WL 770555, at *4
(S.D.N.Y. Nov. 2, 1998) ......................................................................................... 18

*Ya-Chen Chen v. City Univ. of New York*, 805 F. 3d 59 (2d Cir. 2015) ............................... 17, 22

*Yagudaev v. Credit Agricole Am. Servs., Inc.*, No. 18-CV-0513, 2020 WL 583929, at *10
(S.D.N.Y. Feb. 5, 2020) .......................................................................................... 16

-vi-

# TABLE OF AUTHORITIES
(continued)

**Page**

*Yagudaev v. Credit Agricole America Services, Inc.*, 18 Civ. 513 (PAE), 2020 WL
583929, at *12-13 (S.D.N.Y. Feb. 5, 2020)............................................................... 12

*Yu v. N.Y.C. Hous. Dev. Corp.*, 494 Fed. Appx. 122, 126 (2d Cir. 2012) .................................. 16

*Zuffante v. Elderplan, Inc.*, No. 02 Civ. 3250, 2004 WL 744858, at *6 (S.D.N.Y. Mar. 31,
2004) .............................................................................................................................. 14

**STATUTES**

29 U.S.C. § 621 et seq.......................................................................................................... 1

N.Y.C. Admin. Code § 8-101 et seq. ................................................................................... 1

NY Executive Law § 296 et seq. .......................................................................................... 1

**RULES**

Fed. R. Civ. P. 56 ................................................................................................................. 1

## PRELIMINARY STATEMENT

Defendant Northwell Health, Inc. ("Northwell"), by its attorneys, Collazo & Keil LLP, submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 56, for summary judgment dismissing the Complaint in this action in its entirety.

Plaintiff brings this action alleging that Defendant discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq., and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code, § 8–101 et seq.   More specifically, Plaintiff claims that after his supervisor learned his age, he was subject to unwarranted criticism and heightened supervision, which led to his termination.

Defendant now moves for summary judgment on the grounds that there are no material facts in dispute, and Plaintiff has not adduced any evidence that his age played any role in Northwell's decision to terminate his employment.   The testimony and documentary evidence show that Northwell discharged Plaintiff for legitimate business reasons, namely his poor performance.   Seven Northwell employees, ranging from the chair of the department to Plaintiff's supervisor to Plaintiff's peer to Plaintiff's subordinates, all testified about Plaintiff's deficient performance.   Plaintiff's subjective view that he was performing satisfactorily cannot be the basis to show pretext.   Further, Plaintiff alleges that Dinelia Ortiz, his supervisor, started to discriminate against him when she learned of his age.   However, the actions of Ortiz, who is significantly older than Plaintiff, repudiate Plaintiff's theory that she wanted to terminate Plaintiff due to his age. Evidence shows that Ortiz hired and fired Plaintiff when he was 56, and that after she learned of his age, Ortiz went against the recommendation of the Chair of the Neurology Department, Dr. Souhel Najjar, who was unaware of Plaintiff's age and wanted to fire Plaintiff about three months

1

into Plaintiff's employment.  Instead, Ortiz extended Plaintiff's probation to afford him more time

to learn and improve.  However, because Plaintiff continued to exhibit poor performance, Plaintiff

was terminated in October 2019.  Notably, despite there being multiple independent accounts of

Plaintiff's poor performance, including from the chair of the department who recommended

termination, Plaintiff does not allege that any individual other than Ortiz discriminated against

him, or even knew his age.  Not until Plaintiff was terminated did Plaintiff raise concerns about

age discrimination to Northwell.  Due to the allegations made at the termination meeting,

Northwell launched an investigation into Plaintiff's complaint.  The investigation determined that

no discrimination had occurred.

Because there are no issues of material fact from which a reasonable juror could find that

Plaintiff was the victim of age discrimination, and because Plaintiff cannot show that Defendant's

explanation for his discharge is pretextual, summary judgment is warranted, and the Complaint

should be dismissed in its entirety.

## STATEMENT OF FACTS

Plaintiff was hired by Northwell as Senior Administrative Director for the Western New

York region in Northwell's Neurology Division. (Defendant's Statement of Material Facts

Pursuant to Local Rule 56.1 ("56.1") ¶3.) He started his position on May 28, 2019. (56.1 ¶4.)

Plaintiff was interviewed and hired by Dinelia "Dee" Ortiz, who was also Plaintiff's supervisor

for the duration of Plaintiff's employment. (56.1 ¶¶3-7.)  It was Ortiz's decision to hire Plaintiff.

(56.1 ¶5.) Plaintiff, like other employees, was subject to a 90-day probationary period. (56.1 ¶8.)

Plaintiff was 56 years old when he was hired and was still 56 years old at the time of his

termination. (56.1 ¶2.)  Ortiz was 64 years old at the time Plaintiff was hired and 65 at the time

Plaintiff was terminated. (56.1 ¶6.)

To help Plaintiff become acclimated with Northwell, Ortiz directed Plaintiff to enroll in several internal courses to help him understand the operations, policies, and procedures of Northwell in order to support the Western Region managers effectively. (56.1 ¶13.)  Plaintiff never completed the courses. (56.1 ¶13.) Ortiz also instructed Plaintiff to connect with Ed Wright, the Sr. Administrative Director of the Eastern and Central Region, so Wright could assist and mentor Plaintiff as Plaintiff became familiar with the health system. (56.1 ¶14.) Plaintiff failed to utilize Wright as a resource on a number of occasions. (56.1 ¶15.)

Plaintiff struggled during his initial 90-day probationary period. (56.1 ¶¶15, 23.) Dr. Najjar, the Chair of the Department, recommended terminating Plaintiff at the conclusion of the initial 90-day probationary period. (56.1 ¶17.) However, Ortiz chose to give Plaintiff another chance to improve, and instead extended his probation by sixty days. (56.1 ¶¶28, 30.)  During the meeting where Ortiz extended Plaintiff's probationary period, Ortiz discussed negative feedback she received about Plaintiff, and suggested strategies for improvement. (56.1 ¶29.)

Ortiz observed many deficiencies with Plaintiff's performance throughout his employment. (56.1 ¶¶10-12.) She  noted that Plaintiff failed to complete required internal courses, did not carry out multiple assignments, had to have his work completed by other employees, and failed to reach out to Ed Wright for assistance numerous times. (56.1 ¶¶ 13, 15, 19.) Further, Ortiz documented instances of Plaintiff: failing to provide recommendations based on analysis of projects; failing to cultivate strong working relationships with some of the doctors in the Neurology Department; failing to communicate with his supervisor outside of scheduled meetings; failing to follow up with coworkers on projects; and failing to follow up when he did not understand assignments and instructions. (56.1 ¶10.)

Many others in the department shared Ortiz's view about Plaintiff's inadequate work performance. (56.1 ¶¶ 16, 18, 21-24.) Dr. Najjar did not regard Plaintiff as having shown any improvement since the beginning of Plaintiff's employment and told Ortiz that Plaintiff was not effective in the practice. (56.1 ¶16.)   Dr. Chong thought Plaintiff was functioning at a project manager level, a lower level that the Sr. Director level position Plaintiff was hired for, and an employee at the project manager level was not needed. (56.1 ¶18.) Dr. Chong told Ortiz that Plaintiff was not grasping concepts, despite the fact that he had spent time explaining them to Plaintiff. (56.1 ¶18.)

Ed Wright, Plaintiff's peer and the Senior Administrative Director for the Eastern and Central region in the Neurology Division, believed Plaintiff failed to grasp aspects of management and functioned more like a project manager than a Senior Director. (56.1 ¶21.)

Plaintiff's subordinates also found his performance and leadership unsatisfactory. (56.1 ¶22.)  Jeanny Anderson, a Practice Consultant who worked under Plaintiff, stated that Plaintiff offered no guidance to her and in fact, she had to provide guidance to Plaintiff. (56.1 ¶22.) Anderson observed that Plaintiff was flustered and overwhelmed. (56.1 ¶22.)  David Figueroa, a Senior Operations Manager who worked under Plaintiff, saw Plaintiff struggle in his role. (56.1 ¶23.)  Francesca Lee, Human Resource Director, worked with Plaintiff during the investigation of a complaint made by a Northwell employee against Anderson. (56.1 ¶24.) Lee stated that Plaintiff did not fulfill his responsibilities during the complaint process because Plaintiff did not engage during the investigation, and left before the conclusion of the interviews. (56.1 ¶24.)

Ortiz told Plaintiff during a meeting in September 2019 that he was unlikely to pass probation. (56.1 ¶31.)   After Plaintiff continued to not show improvement, the decision to terminate Plaintiff's employment was made by Ortiz after consulting with Dr. Najjar. (56.1 ¶35.)

Plaintiff was informed of his termination during a meeting with Ortiz on October 18, 2019. (56.1 ¶32.) At the end of the meeting where Plaintiff was informed of his termination, Plaintiff stated he believed he was being discriminated against because of his age. (56.1 ¶33.)   This was the first time Plaintiff reported the allegations to any supervisor or HR representative of Northwell. (56.1 ¶33.)

Northwell investigated Plaintiff's allegation of age discrimination. (56.1 ¶36.) During the investigation, Plaintiff and Ortiz were interviewed separately. (56.1 ¶36.)   The investigation determined that Plaintiff's allegations were unsubstantiated. (56.1 ¶37.) Plaintiff's position was never filled and was subsequently eliminated. (56.1 ¶38.)  Plaintiff's duties have been allocated to several employees, including Ortiz, Wright, and Figueroa. (56.1 ¶39.)

Plaintiff alleges he was discriminated against when: Ortiz asked Plaintiff his age (Exhibit B, Carlson Dep. at 74:18-22); Ortiz told Plaintiff he had to have stamina and be energetic for his role during a conversation in which his age was not brought up (Exhibit B, Carlson Dep. at 79:3-80:3); his probation was extended (Exhibit B, Carlson Dep. at 77:10-13); and he was terminated (Exhibit B, Carlson Dep. at 78:16-20). Plaintiff testified that no one at Northwell called Plaintiff by any derogatory names based on his age, and outside of Ortiz asking his age on one occasion, no one at Northwell made any comments that referred to his age. (Carlson Dep. at 81:8-82:15.)

## **ARGUMENT**

## I.    **LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Even in fact-intensive discrimination cases, summary judgment may be appropriate. *Sollazzo v. Just Salad Rest.*, 15-CV-0252, 2018 WL 1273661, at *2 (S.D.N.Y. Mar. 5, 2018).  The Second Circuit has stated that: "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to

discrimination cases than to ... other areas of litigation." *Meiri v. Dacon*, 759 F. 2d 989, 998 (2d Cir. 1985).

When determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F. 3d 549, 554 (2d Cir. 2005) (internal quotation marks and citations omitted).  In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor . . ." *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "A defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F. 3d 253, 258 (2d Cir. 1996); *accord Parker v. Sony Pictures Entm't, Inc.*, 260 F. 3d 100, 111 (2d Cir. 2001) ("A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must designate specific facts showing that there is a genuine issue for trial.") (internal quotation marks and citation omitted); *Feurtado v. City of New York*, 337 F. Supp. 2d 593, 599–600 (S.D.N.Y. 2004).

II.     **PLAINTIFF'S CLAIMS UNDER THE ADEA AND THE NEW YORK STATE HUMAN RIGHTS LAW FAIL**

In the Second Circuit, claims for age discrimination in violation of the ADEA and the NYSHRL are assessed under the *McDonnell Douglas* burden-shifting framework, as modified by the Supreme Court in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)); *accord Shipkevich v. New York & Presbyterian Hosp.*, No. 16 Civ. 9630, 2020 WL 5796202, at *2 (S.D.N.Y. Sept. 29, 2020).  Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802.  If the plaintiff demonstrates a prima facie case of discrimination, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for the adverse employment action. *Id*.  Unlike in Title VII cases, if a defendant provides a "legitimate, non-discriminatory reason" for the employment action, a plaintiff cannot merely show that age was a contributing factor to the adverse employment action to prevail; rather, he must show that age was the "but-for" cause. *Gorzynski*, 596 F.3d at 106 (quoting *Gross*, 557 U.S. at 180) (internal quotation marks omitted).  Importantly, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  Thus, it is not sufficient for the fact-finder to disbelieve the employer's explanation; rather, "'the fact-finder must believe the plaintiff's explanation of intentional discrimination.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)).  In other words, the plaintiff "must always prove that the conduct at issue . . . actually constituted discrimination . . . ." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal quotation marks, emphasis, and bracketing omitted).

### A.      Plaintiff Has Not Made a Prima Facie Case of Discrimination

Plaintiff's claims cannot pass even the first step of the *McDonnell Douglas* analysis because Plaintiff has not shown circumstances that give rise to an inference of discrimination. Plaintiff alleges that on one occasion Ortiz asked Plaintiff his age (Exhibit, B Carlson Dep. at 74:18-22), on another occasion (during a conversation where Plaintiff's age was not brought up) made a comment about needing stamina and energy for the job (Exhibit B, Carlson Dep. at 79:3-80:3), later extended Plaintiff's probation (Exhibit B, Carlson Dep. at 77:10-13), and eventually terminated Plaintiff from employment (Exhibit B, Carlson Dep. at 78:16-20).  Plaintiff testified that no one at Northwell called Plaintiff by any derogatory names based on his age, and outside of Ortiz asking his age on one occasion, no one at Northwell made any comments about his age at all. (Exhibit B, Carlson Dep. at 81:8-82:15.) These stray remarks by Ortiz are insufficient to show an inference of discrimination, and Plaintiff has not alleged that any similarly situated comparators were treated differently from him.

"A plaintiff may either offer direct evidence of discriminatory intent, or may offer indirect evidence to raise an inference of discriminatory intent." *Hongmei Li v. Cushman & Wakefield, Inc.*, No. 16-CV-2484, 2017 WL 1740440, at *5 (S.D.N.Y. May 3, 2017).

### 1.   Direct Evidence

For direct evidence of discriminatory intent, the Second Circuit has established a four-factor test to determine whether alleged offensive remarks suggest discriminatory bias or are merely "stray remarks," the latter of which generally "do not constitute sufficient evidence to support a case of employment discrimination." *Martin v. City Univ. of New York*, No. 17-cv-6791, 2018 WL 6510805, at *9 (S.D.N.Y. Dec. 11, 2018) (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)). The four non-exhaustive factors are:

> "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)."

*Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).

Plaintiff alleges, and Ortiz and Figueroa confirm, that Ortiz asked Plaintiff his age, and Plaintiff responded with an accurate answer. (56.1 ¶¶25-26.) Plaintiff also alleges that, on another occasion at which his age was not mentioned, Ortiz told Plaintiff that he needed to have a lot of stamina and energy to succeed in the role. (Exhibit B, Carlson Dep. at 79:3-80:3.)

Because Ortiz was Plaintiff's supervisor and the decision-maker, the first factor weighs against stray remarks, but the remaining three factors all weigh against attaching any significance to them. Although Plaintiff, Ortiz, and Figueroa all testified about Ortiz asking Plaintiff his age, they do not agree when this happened.[1] Plaintiff claims it happened in mid-July 2019 (Exhibit B, Carlson Dep. at 109:12-16), and alleges that the comment about stamina and energy occurred on a different date in July 2019 (Exhibit B, Carlson Dep. at 77:10-16, 80:5-9), which was three months before Carlson was terminated in October (56.1 ¶34). This is not temporally close enough to show discriminatory intent. "Though there is no bright line establishing temporal proximity, two months between the protected activity and the adverse employment action seems to be the dividing line." *De la Cruz v. City of New York*, 783 F. Supp. 2d 622, 647 (S.D.N.Y. 2011) (internal quotation and citation omitted); *see also Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp.

---

[1] Ortiz and Figueroa testified that Ortiz asked Plaintiff his age in Figueroa's presence in Manhattan during a lunch break when the trio were out of the office getting Chinese food. (Exhibit C, Ortiz Dep. at 136:14-137:15; Exhibit F, Figueroa Dep. at 75:22-76:8.) Plaintiff testified that he and Ortiz were alone in a Westchester facility elevator when she asked. (Exhibit B, Carlson Dep. at 109:12-22.) Both Ortiz and Plaintiff testified she asked him his age only once. (56.1 ¶27.)

3d 431, 438 (S.D.N.Y. 2015) (no connection sufficiently alleged where supervisor's comment made three months before plaintiff's termination (collecting cases)); *see also Moore v. Verizon*, No. 13 Civ. 6467, 2016 WL 825001, at \*9 (S.D.N.Y. Feb. 5, 2016) (remarks regarding Plaintiff's age that occurred months before plaintiff's suspension are non-actionable stray remarks).

To the extent that Plaintiff argues that either the question about his age or the comment about the stamina required for the job were temporally close to the extension of his probation, this is of no legal significance for two reasons.  First, the extension of  probation did not materially affect the terms and conditions of Plaintiff's employment, and therefore is not an adverse employment action. *Smalls v. New York Hosp. Med. Ctr. of Queens*, No. 13-CV-1257 RRM CLP, 2015 WL 5437575, at \*7 (E.D.N.Y. Sept. 15, 2015).   Though his probationary period was extended, Plaintiff was still paid the same amount, retained the same title, worked the same hours, and held the same amount of responsibility while on probation.  Moreover, there were no negative consequences because of the extension—it "merely preserved the existing terms of [plaintiff's] employment."  *Smith v. Da Ros*, 777 F.Supp.2d 340, 355 (D.Conn.2011) (finding that an extension of probation did not constitute an adverse employment action where an automatic 60–day initial probation period was extended by 30 days); *accord Smalls*, 2015 WL 5437575, at \*7.  Indeed, unlike cases that have held that an extension of probation is an adverse employment action because such an extension meant that the employee was not given tenure and the job protections that come with it, *e.g., Tolbert v. Smith*, 790 F.3d 427, 436 (2d Cir. 2015), here, Plaintiff would not have been entitled to any additional compensation or job protection had he completed his probationary period.   Second, Dr. Najjar recommended Plaintiff be terminated at the end of his original probationary period. (56.1 ¶17.) Notably, Plaintiff does not ever allege Dr. Najjar knew Plaintiff's age, and explicitly testified that he does not allege Najjar- or anyone other than Ortiz- discriminated

against him. (56.1 ¶40.) Ortiz made the decision to go against Dr. Najjar's recommendation and save Plaintiff's job, giving him another chance to improve. (56.1 ¶30.) Had Ortiz wanted to expel Plaintiff from Northwell as Plaintiff alleges, she could have easily accepted and implemented the recommendation of the Department Chair.

The content of the alleged remarks is also benign and cannot be viewed as discriminatory. Ortiz asked Plaintiff his age in response to Plaintiff revealing that he had a previous career before entering healthcare. (Exhibit C, Ortiz Dep. at 136:14-137:15; Exhibit F, Figueroa Dep. at 75:22-76:8.) Her response to his age was a compliment—that Plaintiff did not look his age—and not at all disparaging. (Exhibit C, Ortiz Dep. at 137:7-11.)  Plaintiff also alleges that Ortiz told him that he would need to have energy and stamina for the job.  Again, there is nothing disparaging in this remark, and in fact, age is not mentioned at all.  Ortiz, who is more than ten years older than Carlson (56.1 ¶6), had previously performed Plaintiff's duties herself when she only oversaw the Western Region (Exhibit C, Ortiz Dep. at 32:4-10, 48:2-18).

Finally, Plaintiff has provided no evidence that these alleged comments were related to the decision-making process.  The question about Plaintiff's age was not prompted by anything related to his performance or abilities, but by mention of a prior career. (Exhibit C, Ortiz Dep. at 136:14-137:15; Exhibit F, Figueroa Dep. at 75:22-76:8.) Not only was the stamina remark unrelated to age, but neither Plaintiff nor any other witness testified that Plaintiff's demonstration or lack of "stamina" or "energy" were mentioned or played a part in any evaluations or employment decisions.  Courts in this District have declined to find that ostensibly discriminatory comments were "related to" the decision-making process in far less attenuated circumstances than those presented here.  For example, even a supervisor explicitly telling a plaintiff that he is "too old for this job" has been found to be insufficiently related to the decision-making process. *See Yagudaev*

11

*v. Credit Agricole America Services, Inc.*, 18 Civ. 513 (PAE), 2020 WL 583929, at *12-13 (S.D.N.Y. Feb. 5, 2020) (supervisor's comment of plaintiff being "too old for this job" insufficient where the comment was made during a walk outside the office and not temporally close to the termination).

Accordingly, even though these comments were allegedly made by Ortiz, they are still non-actionable stray remarks. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) ("[S]tray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination."); *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (Isolated statements, "without more, cannot get a discrimination suit to a jury."); *Bailey v. Frederick Goldman, Inc.*, No. 02 Civ. 2429, 2006 WL 738435, at *4 (S.D.N.Y. Mar. 23, 2006) ("[S]tray comments ... without some demonstrable connection to plaintiff's discharge, are insufficient to give rise to an inference of discrimination.").

### 2. Indirect Evidence

A plaintiff may also try to show discriminatory treatment by showing that the employer subjected the plaintiff to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group—i.e., a "comparator." *Li*, 2017 WL 1740440, at *5. Where a plaintiff is relying on differences in treatment to establish an inference of discrimination, the plaintiff bears the burden of demonstrating that a putative comparator is similarly situated in all material respects. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir.2010). A proposed comparator is not similarly situated "in all material respects" unless he engaged in all of the same misconduct as the plaintiff for which the plaintiff

was subjected to an adverse employment action. *Jenkins v. St. Luke's–Roosevelt Hosp. Ctr.*, 09-cv-12, 2009 WL 3682458, at *7–8 (S.D.N.Y. Oct. 29, 2009).   However, the Plaintiff has not established, nor even alleged, that he was treated differently from other comparators because of his age.   Plaintiff admitted that he was unaware of the tasks of Ed Wright, the only other employee at his level in the department, because they worked in different regions and their duties did not overlap. (Carlson Dep. at 53:22-54:7, 92:3-5).   Further, Wright did not have the performance issues Plaintiff exhibited.   Plaintiff's failure to allege similarly situated comparators is fatal to a disparate treatment claim. *See*, *e.g.*, *Garrett v. Mazza*, No. 97 Civ. 9148, 2010 WL 653489, at *7 (S.D.N.Y. Feb. 22, 2010) (holding that no reasonable jury could find that plaintiff was terminated under circumstances giving rise to an inference of discrimination where plaintiff had failed to identify any similarly situated comparators who were treated more favorably); *Pesok v. Hebrew Union Coll.—Jewish Inst. of Religion*, 235 F. Supp. 2d 281, 288 (S.D.N.Y. 2002) (summary order) (dismissing discrimination claims where there was no evidence that similarly situated employees were treated differently from the plaintiff).

### 3.   Inferences Against Discrimination

Plaintiff's argument that the circumstances give rise to an inference of discrimination is further undermined by the fact that Ortiz made the decision to hire and fire Plaintiff within a five-month span. "When the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *Auguste v. New York Presbyterian Med. Ctr.*, 593 F. Supp. 2d 659, 665 (S.D.N.Y. 2009) (quoting *Carlton v. Mystic Transp., Inc.*, 202 F. 3d 129, 137 (2d Cir. 2000)).   Here, it is undisputed that Ortiz both hired and fired Plaintiff. (56.1 ¶5, 35.) It is also

undisputed that Plaintiff was 56 years old at the time of their hiring and firing.[2] (56.1 ¶2.) "When the same actor makes both the decision to hire the plaintiff and the decision to fire the plaintiff, the defendant is entitled to a strong inference that there was no discriminatory intent on the part of the employer." *Emanuel v. Oliver, Wyman & Co.*, LLC, 85 F. Supp. 2d 321, 332 (S.D.N.Y. 2000). Defendant should be afforded such a strong inference.

Finally, the fact that Ortiz was older than Plaintiff, and thus a member of the same protected class as Plaintiff, weakens any inference that the decision to fire Plaintiff was based on his age. *See, e.g., South v. Cont'l Cas. Co.*, No. 17-CV-5741, 2018 WL 4689106, at *12 (S.D.N.Y. Sept. 27, 2018); *Testa v. CareFusion*, 305 F. Supp. 3d 423, 436–37 (E.D.N.Y. 2018); *Zuffante v. Elderplan, Inc.*, No. 02 Civ. 3250, 2004 WL 744858, at *6 (S.D.N.Y. Mar. 31, 2004) (noting invidious discrimination especially unlikely when, *inter alia*, the decision-maker is in the same protected class as plaintiff); *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F.Supp.2d 202, 210 (S.D.N.Y. 2000) (finding plaintiff's evidence of age discrimination "thin" when, in part, the decision-makers were also in the protected age category); *Drummond v. IPC Int'l, Inc.*, 400 F.Supp.2d 521, 532 (E.D.N.Y. 2005) (finding "a well-recognized inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class"); *Pisana v. Merrill Lynch & Co.*, No. 93 Civ. 4541, 1995 WL 438715, at *4 (S.D.N.Y. July 20, 1995) ("The fact that ... decision makers were close to [plaintiff's] age, or older, weakens any suggestion of age discrimination." (citing *Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 225 (E.D.N.Y. 1993)) ); *Earvin v. City Univ. of N.Y.*, No. 03 CV 9521, 2008 WL

---

[2] Plaintiff may contend that because Ortiz learned of Plaintiff's age after he was hired, Ortiz did not know that Plaintiff was in the protected class at the time of hire. However, Ortiz testified that she believed Plaintiff was five to ten years younger than his actual age (56) (Ortiz Dep. at 138:19-25), which means that even at the most extreme estimate, Ortiz believed Plaintiff was well within the protected class both at the time of hire and the time of his termination.

14

5740359, at *6 (S.D.N.Y. Jan. 17, 2008) ("[T]he decisionmakers' status as protected class members enhances the inference that there was no discriminatory motive."). In fact, Ortiz was older than 56 (Plaintiff's age during his employment with Northwell) when Ortiz had Plaintiff's role prior to her promotion.[3] (Exhibit C, Ortiz Dep. at 32:4-10, 48:2-18; Exhibit J). Ortiz left that role in 2019, the year she turned 65. (Exhibit C, Ortiz Dep. at 29:5-12.) It is nonsensical to allege that Ortiz believed that a 56-year old was too old to perform the job she had performed at 64.

### B.  Defendant Has Articulated A Non-Discriminatory Reason For Plaintiff's Termination

Assuming arguendo that Plaintiff can establish a prima facie case of discrimination, which as discussed *supra* he cannot, Defendant has articulated a non-discriminatory reason for Plaintiff's termination—his poor performance.

The Defendant's burden to proffer a non-discriminatory reason for Plaintiff's termination "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

As stated *supra*, Plaintiff was terminated due to his poor performance.  Seven different employees – including six against whom Plaintiff has alleged no evidence of discriminatory animus – testified to deficiencies in Plaintiff's work performance. (56.1 ¶¶10-24, 40.) The testimony included Plaintiff being "overwhelmed," "not a good fit," "struggling," not showing any improvement, failing to grasp aspects of management, functioning like a lower-level employee, not fulfilling his responsibilities, needing his work to be completed by other employees, among many other instances of poor performance. (*Id*.)

---

[3] Ortiz joined Northwell in 2016 (Exhibit C, Ortiz Dep. at 28:18-21) and oversaw only the Western Region (Exhibit C, Ortiz Dep. at 32:4-8) until her promotion in 2019 (Exhibit C, Ortiz Dep. at 29:5-12). In 2016, Ortiz turned 62 years old, and in 2019, turned 65 years old. (Exhibit J.)

Multiple reports of this nature "provide a legitimate, non-discriminatory basis for terminating Plaintiff's probationary employment." *Concha v. Purchase Coll. State Univ. of New York*, No. 17 CIV. 8501 (JCM), 2019 WL 3219386, at *8 (S.D.N.Y. July 17, 2019) (defendant proffered legitimate reason for plaintiff's dismissal where multiple coworkers testified to plaintiff's poor job performance); *see also Johnson v. Schmid*, 750 F. App'x 12, 17 (2d Cir. 2018) (poor job performance is a legitimate, non-discriminatory reason for firing an employee); *Yu v. N.Y.C. Hous. Dev. Corp.*, 494 Fed. Appx. 122, 126 (2d Cir. 2012) (defendants proffered legitimate, non-discriminatory reasons for plaintiff's termination, including that "he did not work well with others, particularly on team projects;" and "he failed to follow instructions… while failing to complete his own."); *Bogdan v. N.Y. City Transit Auth.*, No. 02 Civ. 09587(GEL), 2005 WL 1161812, at *8 (S.D.N.Y. May 17, 2005) (multiple complaints of poor job performance were legitimate, non-retaliatory reasons for employee's termination). In fact, "[p]oor performance ... is the *ne plus ultra* of legitimate, non-discriminatory business rationales." *Yagudaev v. Credit Agricole Am. Servs., Inc.*, No. 18-CV-0513, 2020 WL 583929, at *10 (S.D.N.Y. Feb. 5, 2020) (quoting *Downey v. Adloox, Inc.*, No. 16 Civ. 1689 (JMF), 2018 WL 5266875, at *5 (S.D.N.Y. Oct. 23, 2018)).

Here, Defendant has submitted not only documentary evidence, but the testimony of *seven* different employees who were critical of Plaintiff's performance, and have therefore met their burden.

### C.    Plaintiff Cannot Establish Pretext

Because Defendant has met its burden of establishing a legitimate, non-discriminatory reason for Plaintiff's termination, in order to defeat Defendant's summary judgment motion, Plaintiff bears the burden of establishing that this proffered reason was merely a pretext for discrimination. Plaintiff cannot meet this high burden.

Plaintiff claims that he did not have performance issues.  While this is false, even if Plaintiff could somehow show that all seven witnesses erroneously attributed all instances of poor performance to Plaintiff, it would not be enough to defeat summary judgment.  In any discrimination case, the question is not whether the defendant's decision to fire the plaintiff was correct, but whether it was discriminatory. *See, e.g., McPherson v. N.Y.C. Dep't of Educ.*, 457 F. 3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what motivated the employer. . ." (emphasis in original)); *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009) ("Where a plaintiff has been terminated for misconduct, the question is not whether the employer reached a correct conclusion in attributing fault [to the plaintiff]. . . but whether the employer made a good-faith business determination.").  Indeed, "[t]he law does not protect misplaced conclusions of fault or terminations based on the wrong reasons, unless the reasons are pretext for discrimination." *Campos v. BASF Catalysts, LLC*, No. 07-CV-7068, 2009 WL 1616378, at *6 (S.D.N.Y. May 19, 2009).  The Court cannot act as "a super-personnel department that reexamines employers' judgments." *Ya-Chen Chen v. City Univ. of New York*, 805 F. 3d 59, 73 (2d Cir. 2015).

Further, "an employee's disagreement with [his] employer's evaluation of [his] performance is insufficient to establish discriminatory intent." *Ricks v. Conde Nast Pub., Inc.*, 6 F. App'x 74, 78 (2d Cir. 2001); *accord Potash v. Florida Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 592 (S.D.N.Y. 2013) ("Plaintiff's personal disagreements with [the defendants'] evaluation of her job performance are insufficient, as a matter of law, to preclude summary judgment."); *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 382 (S.D.N.Y. 2013) ("[Plaintiff]'s fundamental disagreement with the conclusions [his] supervisors drew from incidents which [he] admits

occurred, and [his] subjective belief that they should not have reflected badly on [his] performance because they were someone else's fault, is not evidence that [his] supervisors' appraisals were a sham, invented to mask discrimination."); *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 385 (S.D.N.Y. 2007) (the employer, not the employee, decides what constitutes satisfactory performance).

Additionally, a discriminatory inference can be rebutted when multiple evaluators all express dissatisfaction with the plaintiff's performance. *Baluta v. Hicksville Union Free Sch. Dist.*, No. 94–CV–1871, 2000 WL 335770, at *5 (E.D.N.Y. Mar. 15, 2000) (finding that use of multiple evaluators undercuts discriminatory inference).  Here, not only did Plaintiff's supervisor determine that Plaintiff's performance was unsatisfactory, the Chair of the Department, the Vice Chair of the Department, his peer, and several subordinates all noted Plaintiff's poor performance. (56.1 ¶¶ 10-24.)

In support of his discrimination claim, Plaintiff provides nothing more than speculation and bald, conclusory statements to allege that any adverse employment action suffered by Plaintiff was motivated by discriminatory animus.  As noted *supra*, Plaintiff fails to identify any younger comparators, but rather concludes that after Ortiz learned Plaintiff's age, "she had been treating him unfairly and looking to build a case to fire him" (Compl. ¶ 29) and made "false claims" about his performance (Carlson Dep. at 74:18-22).  Plaintiff's allegations rely on the logical fallacy *post hoc ergo propter hoc*- or, assuming that a causal relationship exists when acts or events are merely sequential- which "has never been the law of this Circuit." *Wilson v. Reuben H. Donnelley Corp.*, No. 98 CIV. 1750 (AGS), 1998 WL 770555, at *4 (S.D.N.Y. Nov. 2, 1998).

To the extent Plaintiff argues the timing of his probation extension and termination are evidence of pretext, as explained *supra*: the extension was not an adverse employment action

because there was no negative affect on Plaintiff's working conditions and Ortiz actually made a decision favorable to Plaintiff when she extended Plaintiff's probation after the Chair of the Department told her he wanted to fire Plaintiff; and the termination occurred over three months after his age came up in conversation, longer than the two-month period courts typically consider. *De la Cruz* 783 F. Supp. 2d at 647.  Further, temporal proximity is not enough to establish pretext in this Circuit. *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014).

Finally, "statements by decision-makers unrelated to the decisional process are not by themselves sufficient to satisfy plaintiff's burden of proving pretext." *Schreiber v. Worldco*, LLC, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004) (citing *Burrell v. Bentsen*, 91 Civ. 2654, 1993 WL 535076, at *8 (S.D.N.Y. Dec. 21, 1993)).  As explained *supra*, the question about age arose in a context unrelated to Plaintiff's employment with Northwell, and the "stamina" comment Plaintiff alleges does not even reference age.  Courts have found that even a comment by supervisors explicitly linking a plaintiff's age and work performance, which is absent here, would not be enough to create an issue of fact regarding pretext. For example, in *Hess v. Mid Hudson Valley StaffCo LLC*, 776 F. App'x 36, 37 (2d Cir. 2019), the court granted summary judgment when multiple supervisors made repeated comments suggesting that plaintiff was too old to continue working, but the plaintiff failed to present other indicia of improper animus.  Similarly, in *Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41–42 (2d Cir. 2012) a decision-maker asking the plaintiff, "[you're] 71 years of age, how long do you expect to work," was held insufficient to show that employer's stated reason for termination was pretext.  Measured against such precedent, Ortiz's statements are insufficient to show that Plaintiff's age was the but-for cause of his termination.

## III.   PLAINTIFF'S NEW YORK CITY HUMAN RIGHTS LAW CLAIMS ALSO FAIL

Claims under the NYCHRL are subject to the *McDonnell Douglas* burden-shifting analysis just like the ADEA and NYSHRL claims, but are analyzed under a broader standard than claims

brought under Title VII or the ADEA. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *Hill v. New York City Hous. Auth.*, 220 F. Supp. 3d 499, 509 (S.D.N.Y. 2016).  Under the NYCHRL, "the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason." *Mihalik* 715 F.3d at 110 n.8.  The defendant may then present evidence that its actions were taken for legitimate, nondiscriminatory reasons, and the defendant is entitled to summary judgment if the record shows that "discrimination played no role in its actions." *Id*. (quotation marks, alteration, and emphasis omitted).  "Notwithstanding this different analysis, the NYCHRL does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56." *Hill v. Bloomberg L.P.*, No. 14-cv-9809, 2016 WL 1665599, at *10 (S.D.N.Y. Apr. 20, 2016) (quotation marks omitted). "Even under the NYCHRL, a plaintiff must prove that some forbidden factor ... factored into the adverse employment action of which he complains." *Id*. at *12. Indeed, "even under the more liberal NYCHRL, summary judgment will still be appropriate where a plaintiff does not adduce sufficient evidence of a link between [the challenged action] and a discriminatory motive...." *Konteye v. New York City Dep't of Educ.*, No. 17-CV-2876, 2019 WL 4418647, at *20 (S.D.N.Y. Apr. 10, 2019), (quoting *Kerman-Mastour v Fin. Indus. Regulatory Auth., Inc.*, 814 F. Supp. 2d 355, 367 (S.D.N.Y. 2011)).

Plaintiff's claims fail under this liberal standard.  As explained *supra*, Plaintiff cannot establish a prima facie case of discriminatory treatment, which is as necessary to a NYCHRL claim as to an ADEA or NYSHRL claim.  Using the direct evidence route, "[e]ven under the liberal NYCHRL standard," "[i]solated incidents of unwelcome verbal conduct have been found to constitute the type of petty slights and trivial inconveniences that are not actionable." *Alexander v. Possible Prods., Inc.*, 336 F. Supp. 3d 187, 195 (S.D.N.Y. 2018).  If the remarks are made by a

supervisor and are the type that show animus, the stray remarks are still merely petty slights. *See Kaur v. N.Y.C. Health & Hosp. Corp.*, 688 F. Supp. 2d 317, 338, 340 (S.D.N.Y. 2010) (two "obviously racist" comments by supervisors were found to be merely petty slights and trivial inconveniences).  Because the alleged statements relied upon by Plaintiff to create an inference of discrimination were not the type that show animus to older individuals, and not in the context of decision-making, they are "insufficiently serious for [plaintiff's] claim to survive summary judgment." *Alvarado v. Jeffrey, Inc.*, 149 F. Supp. 3d 486, 500 (S.D.N.Y. 2016).

Similarly, Plaintiff cannot rely on indirect evidence of discrimination to advance his claim. Plaintiff's failure to properly allege comparators is again dispositive, even in the NYCHRL context.  Indeed, "for a plaintiff to raise an inference of discrimination through comparative analysis, the NYCHRL requires the plaintiff to show that [he] is similarly situated in all material respects to the coworker to whom [he] compares [him]self." *Varughese v. Mount Sinai Med. Ctr.*, No. 12 CIV. 8812, 2015 WL 1499618, at *40 (S.D.N.Y. Mar. 27, 2015), aff'd, 693 F. App'x 41 (2d Cir. 2017).  As discussed at length *supra*, Plaintiff has not done this.

Even if Plaintiff could establish a prima facie case, Defendant would still be entitled to summary judgment on the NYCHRL claims because Plaintiff again has not shown a scintilla of discriminatory animus.  "Plaintiff's mere assertion that defendant's explanations [are] pretextual is not enough.  Plaintiff's prima facie case, combined with no evidence that the stated justification is false other than Plaintiff's unsupported assertion that this is so, may not" permit the trier of fact to conclude that the employer unlawfully discriminated against him. *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, at n. 6 (2004).  Indeed, the "NYCHRL must of course be interpreted as liberally as is reasonably possible, but even under that statute, acceding to the logical fallacy of *post hoc ergo propter hoc* is not reasonable." *Varughese*, 2015 WL 1499618, at *42.  It cannot be

disputed, given the documents and testimony by numerous employees, that Defendant terminated Plaintiff due to its view that Plaintiff performed inadequately.   Seven different Northwell employees testified that Plaintiff exhibited poor work performance. *See Ya-Chen Chen*, 805 F.3d at 76  ("Plaintiff's subjective view that they are all wrong cannot establish pretext. Even under the NYCHRL, the mere fact that a plaintiff may disagree ... does not raise an inference of pretext."). As is the case here, "[w]here the [plaintiff] has not proffered any direct or circumstantial evidence tending to rebut a defendant's stated reason, the Court need not undertake both the *McDonnell Douglas* and mixed-motive analyses, and summary judgment is appropriate in the defendant's favor." *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 876 (S.D.N.Y. 2013).

Northwell has articulated a legitimate reason for its decision that is non-discriminatory, and Plaintiff can offer no evidence to rebut it.  There is, accordingly, no evidentiary route by which a jury would believe that discriminatory animus played a role in Plaintiff's termination from employment, and his claims should be dismissed upon summary judgment.

## <u>CONCLUSION</u>

For the reasons set forth in this memorandum of law, Defendant respectfully requests that the Court (a) grant their motion to for summary judgment in its entirety, (b) award Defendant its costs and disbursements and (c) grant Defendant such other relief as the Court deems just and proper.

Dated:  New York, New York
       March 4, 2022

COLLAZO & KEIL LLP

By: /s/ _____
     Daniel J. LaRose
     747 Third Avenue, 25th Floor
     New York, New York 10017
     (212) 758-7600
     *Attorneys for Defendant*